# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Marvin Mills,**
**Petitioner Below, Petitioner**

**vs)  No. 18-0177**  (Raleigh County 06-C-784)

**Donnie Ames, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**April 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Marvin Mills, by counsel Stephen P. New, appeals the January 25, 2018, order of the Circuit Court of Raleigh County that denied his petition for a writ of habeas corpus following his conviction of first-degree murder with use of a firearm. Donnie Ames, Superintendent, Mount Olive Correctional Complex,[1] by counsel Robert L. Hogan, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September 1999, petitioner drove to Richmond Cleaners in Beckley, West Virginia, stepped inside, removed his .38 caliber gun from the manila envelope he was carrying,[2] and shot Pamela Cabe two times, causing her death. Petitioner then crossed the street, tossed his handgun nearby, and waited for the police. The police recovered the handgun with petitioner's help and took him into custody. Petitioner confessed to the murder.[3]

---

[1]Since the filing of the appeal in this case, the superintendent of Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W. Va. Code § 15A-5-3.

[2]The envelope had petitioner's return address on it. It was recovered at the scene.

[3]Petitioner and the victim shared a grandchild who was the subject of a custody dispute between the victim's son and petitioner's daughter.

1

In May 2000, petitioner was tried before a jury in the Circuit Court of Raleigh County on the charge of first-degree murder. Given the overwhelming evidence that he shot the victim, petitioner did not dispute this fact at trial. He was convicted of first-degree murder by use of a firearm and was sentenced to life in prison without the recommendation of mercy. Petitioner appealed and this Court reversed his conviction and remanded the matter for a new trial. *See State v. Mills*, 211 W. Va. 532, 566 S.E.2d 891 (2002) ("*Mills I*") (finding reversible error in the trial court's failure to grant a motion to strike a prospective juror for cause and the prosecutor's improper references to petitioner's decision not to testify).

In November 2003, following a second jury trial, petitioner was again convicted of first-degree murder by use of a firearm and was sentenced to life without mercy. Petitioner appealed and this Court affirmed his conviction. *See State v. Mills*, 219 W. Va. 28, 631 S.E.2d 586 (2005) ("*Mills II*").

Petitioner filed a pro se petition for a writ of habeas corpus in 2006. Various appointed counsel came and went and petitioner's present counsel was appointed in May 2011. On June 26, 2013, petitioner, by counsel, filed an extensive amended habeas petition.

Following a July 15, 2014, hearing, the habeas court entered a detailed thirty-page order denying relief, specifically acknowledging that, at the habeas hearing, petitioner adopted a strategy that he had not previously employed in either of his trials, appeals, or early on in his request for habeas relief: actual innocence. The habeas court rejected any claim that this "new 'contention in fact'" constituted "new evidence" warranting habeas relief because petitioner had the opportunity to make such claim in both trials, in his two appeals, and in his earlier post-conviction pleadings.

The habeas court further found that the following grounds for relief alleged in the amended petition were previously and finally adjudicated in petitioner's appeal of his conviction following the second trial: violation of the right to confront witnesses; prosecutorial misconduct (as to the prosecutor's closing argument); failure to strike jurors; improper media involvement; and media coverage of the jury view of the crime scene. *See generally Mills II*, 219 W. Va. 28, 631 S.E.2d 586; W. Va. Code § 53-4A-1. As for the other grounds alleged (with the exception of the ineffective assistance of counsel claim), the habeas court concluded that petitioner failed to rebut the presumption that he intelligently and knowingly failed to advance certain issues that could have been raised prior to or during trial or on direct appeal—i.e., "911 Recordings"; "Failure [to] preserve audiotape recorded statements"; prosecutorial misconduct; prior acts of prosecutorial misconduct involving conduct other than the prosecutor's closing argument; prosecutor acted as an "over[-]zealous advocate"; violation of Trial Court Rule 17 by the circuit judges; appearance of bias by "[t]he 10ᵗʰ Judicial Circuit"; failure to bifurcate trial and sentencing; failure to bifurcate on the issue of eligibility for probation; and "[f]ruit of the [p]oisonous [t]ree—[n]o *Miranda* warning/coercion to give 'voluntary statement.'" *See generally Mills II,* 219 W. Va. 28, 631 S.E.2d 586; W. Va. Code § 53-4A-1.

Thus, the remaining issue before the habeas court was whether petitioner received ineffective assistance of trial counsel on the following grounds: (1) failure to question or move to suppress petitioner's statement, which petitioner now claims was coerced; (2) "[d]efense counsel pled petitioner guilty[;]" (3) failure to dispute the State's claim that petitioner planned a "sneak

attack" on the victim; (4) failure to investigate eyewitness's claim; (5) failure to impeach witness's inconsistent statements; (6) failure to investigate and clarify firearm examiner testimony; (7) failure to challenge the gun-residue kit; and (8) failure to move for mistrial or file pretrial motions regarding missing evidence.

The habeas court addressed and rejected each of petitioner's ineffective assistance arguments. *See* Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."). This appeal followed.

This Court reviews orders denying habeas relief under a three-prong standard of review: "We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

In petitioner's first assignment of error, he argues that the habeas court incorrectly concluded that trial counsel was not ineffective. Petitioner argues, as he did below, that trial counsel was ineffective in failing to question law enforcement about the circumstances surrounding his confession, which petitioner now claims was coerced and should have been suppressed. The habeas court found that, at the suppression hearing (at which petitioner refused to testify) and in his two appeals from his convictions,[4] he never claimed that his confession was coerced or, as he now contends, that he requested a lawyer three times before making his statement.[5] Petitioner does not challenge these findings in this appeal. Further, trial counsel testified that petitioner never advised him of the alleged circumstances surrounding his confession. Rather, the evidence showed that petitioner twice confirmed that he understood his *Miranda*[6] rights before giving his confession and that he agreed in the recorded confession that his statement was not coerced. Petitioner fails to make any compelling argument on appeal that the habeas court abused its discretion in finding that trial counsel was not ineffective in failing to investigate the alleged circumstances surrounding petitioner's confession.

Petitioner also argues, as he did below, that trial counsel was ineffective for conceding to the jury that petitioner killed the victim; failing to investigate an eyewitness's claim that the shooter appeared to be "black or Hispanic [be]cause he was dark skinned," which is a physical description that does not match petitioner's; failing to impeach the testimony of an eyewitness

---

[4]Petitioner does not claim that his appellate counsel was ineffective.

[5]At the habeas hearing, petitioner testified that he told trial counsel that he confessed only after he overheard an officer tell "someone" on the telephone that if petitioner does not talk, petitioner's wife and daughter would be charged with conspiracy to commit murder.

[6]*See Miranda v. Arizona,* 384 U.S. 436 (1966).

who, at the first trial, described the shooter as having a long beard and pony tail, but in the re-trial, failed to mention a pony tail; failing to undermine the testimony of the State's firearm expert; and failing to re-test the gunshot residue found on petitioner's hand, which petitioner now claims could have been alternatively explained by the fact that, on the morning of the murder, he had used two different nail guns that "create[d] powder residue." We find no error. Despite petitioner's new theory of actual innocence, the evidence that he shot the victim was overwhelming. Thus, it is abundantly clear that trial counsel, in concert with petitioner, acted reasonably in conceding the same in order to focus defense efforts on persuading the jury to convict on a charge that was lesser than the indicted charge of first-degree murder and/or to recommend a sentence of mercy. The above arguments that petitioner claims support an ineffective assistance claim are wholly inconsistent with the well-founded defense strategy employed by trial counsel in both trials and in his appeals of those convictions. The habeas court did not err in concluding that trial counsel was not ineffective in this regard.

Petitioner's remaining arguments in support of his claim that trial counsel was ineffective need not be addressed. First, petitioner argues that trial counsel failed to dispute the State's claim that petitioner planned a "sneak attack" on the victim and that the State improperly used "[s]neak attack rhetoric" "extensively" throughout its case-in-chief and during closing argument. Petitioner argues that trial counsel's failure to object to or "investigate" the State's claim amounted to ineffective assistance. Petitioner fails to include any citation to the record in support of this alleged error. Second, petitioner argues that trial counsel was also ineffective by failing to move for a mistrial or file pretrial motions regarding "missing" recordings of certain witness statements and unspecified 9-1-1 calls. Though petitioner summarily states that he was "greatly prejudiced by the failure of the State and his counsel to preserve this evidence in that witnesses could not be impeached at the second trial with their own words[,]" he fails to provide any specific instances of prejudice with respect to witness testimony or otherwise cite to the record in support of this claim. Furthermore, petitioner fails to argue the legal standard under which a mistrial should have been granted, identify what motions should have been filed by trial counsel prior to trial, or explain what impact the recordings would have had on petitioner's defense at trial. In short, petitioner's arguments are inadequately briefed and we decline to address them. *See* W. Va. R. App. P. 10(c)(7) (providing that petitioner's brief "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. *The Court may disregard errors that are not adequately supported by specific references to the record on appeal.*" (Emphasis added)); *Evans v. United Bank, Inc.,* 235 W. Va. 619, 629, 775 S.E.2d 500, 510 (2015) (observing that petitioners' argument failed to meet requirements of Rule 10(c)(7), and concluding, therefore, "the issue has been waived for purposes of appeal"); *State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (stating that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."). *See also State v. Allen,* 208 W. Va. 144, 162, 539 S.E.2d 87, 105 (1999) (stating that "[i]n the absence of supporting authority, we decline further to review [these] alleged error[s] because [they have] not been adequately briefed.").

Finally, petitioner raises seven other assignments of error, all of which were raised and correctly resolved by the habeas court in its January 30, 2018, order denying relief. The habeas court determined that the following alleged errors were waived because petitioner failed to raise

them in either of his appeals from his convictions: prosecutorial misconduct relating to the improper suppression of 9-1-1 recordings and the alleged destruction of recorded statements of witnesses; the alleged violation of Trial Court Rule 17 by the judges of the Tenth Judicial Circuit; the trial court's failure to bifurcate the trial and sentencing phases; and the admission of gruesome photographs of the victim. *See* Syl. Pt. 2, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 191 (1972) ("In a habeas corpus proceeding under Chapter 53, Article 4A, Code of West Virginia, 1931, as amended, the burden of proof rests on petitioner to rebut the presumption that he intelligently and knowingly waived any contention or ground for relief which theretofore he could have advanced on direct appeal.").

Similarly, the habeas court determined that the following alleged errors were previously and finally adjudicated in petitioner's appeal from his conviction[7]: prosecutorial conduct involving actions and remarks by the prosecuting attorney; alleged violation of petitioner's right to confront a witness; and whether "media involvement" during the jury view of the crime scene warranted an inquiry into whether the jury was prejudiced by the same. *See* Syl. Pt. 1, *Bowman v. Leverette*, 169 W. Va. 589, 289 S.E.2d 435 (1982) ("*W. Va. Code*, 53-4A-1(d) [1967] allows a petition for post-conviction habeas corpus relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively."). On appeal, petitioner fails to present any persuasive arguments that the habeas court abused its discretion in denying habeas relief on these grounds.

Accordingly, upon careful review and consideration of the habeas court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the habeas court. Our review of the record supports the habeas court's decision to deny petitioner post-conviction habeas corpus relief based on the alleged errors raised herein, which errors were also argued below. Indeed, the habeas court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the habeas court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the court's January 25, 2018, order denying petitioner's petition for a writ of habeas corpus to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 15, 2019

---

[7]*See generally Mills II*, 219 W. Va. 28, 631 S.E.2d 586.

5

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins


**DISQUALIFIED:**

Justice John A. Hutchison

IN THE CIRCUIT COURT OF RALEIGH COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.
Marvin Mills,

    Petitioner

vs.           CASE NO. 06-C-784-H

THOMAS MCBRIDE, WARDEN
MOUNT OLIVE CORRECTIONAL COMPLEX
    Respondent

## FINDINGS OF FACT

1. On the afternoon of September 8, 1999, Pamela Cabe was fatally shot inside her place of business at Richmond Cleaners in Beckley, West Virginia and the Petitioner, Marvin Mills (hereinafter Mills) was apprehended outside Richmond Cleaners immediately after the killing with a .38 caliber pistol a few feet away; he confessed to shooting and killing Pamela Cabe with that pistol.

2. Following a jury trial in the Circuit Court of Raleigh County, Mills was convicted on May 2, 2000 of first degree murder by use of a firearm, without a recommendation of mercy, and was sentence by Judge John Hutchinson to life in the penitentiary without possibility of parole. Thereafter, the conviction was reversed and remanded by the W. V. Supreme Court of Appeals in State v. Mills, 566 S.E. 2d 891 (2002).

3. A second jury trial was held in Raleigh County Circuit Court and on November 7, 2003, Mills was again convicted of first degree murder by use of a firearm without a recommendation of mercy, and was again sentenced by Judge John Hutchinson to life

imprisonment without the possibility of parole: thereafter, such conviction and sentence were affirmed by the W.Va. Supreme Court of Appeals in *State v. Mills*, 631 S.E. 2d 586 (2005).

4. During his first trial Mills was represented by two attorneys from the Raleigh County Public Defender's Office; in his second trial he was represented by John Sullivan and Stephen Kenney of the Kanawha County Public Defender's Office and in his first and second appeals he was represented by at least two other attorneys from the appellate division of the Kanawha County Public Defender's Office.

5. On June 26, 2013, Mills, by counsel, filed an Amended Petition for Writ of Habeas Corpus (hereinafter the Petition).

6. The Petition (at 2) recites the fact that this habeas proceeding has been pending since 2006 and that "appointed counsel has changed over the years," with Mills' present habeas counsel, Stephen New, appointed by Order of Judge John A. Hutchison on or about May 12, 2011.

7. On September 20, 2012 Judge John A. Hutchison voluntarily recused himself from this matter, for reasons wholly unrelated to this case, and by Order of the W.Va. Supreme Court of Appeals the undersigned Senior Status Judge John L. Cummings (hereinafter the Court) was assigned to preside over an omnibus habeas corpus hearing and to rule upon the matters raised in the Petition.

8. This Court has reviewed the Petition, the State's Response to Amended Petition for Writ of Habeas Corpus, the original *pro se* Petition for Writ of Habeas Corpus and the subsequent Amended Petition filed by prior habeas counsel, the Writ of Prohibition and responses thereto and the W.Va. Supreme Court ruling concerning recusal of Judge John A. Hutchison and the prosecuting attorney, the transcripts of the defendant's two trials, the records of and opinions resulting from his two direct appeals, the records maintained in the Raleigh County Circuit Clerk's Office, including several forensic evaluations of the defendant and multiple

2

letters and *pro se* pleadings from Mills to the Raleigh County Circuit Court and to the W. Va. Supreme Court of Appeals, and the testimony taken and exhibits introduced during the July 15, 2014 habeas hearing.

9. The defendant in his verification of June 4, 2013, filed with the Petition, knowingly and intelligently waived all grounds included in the "Losh List," *Losh v. McKenzie*, 277 S.E. 2d 606 (W.Va. 1981) and all other grounds for habeas review with the exception of the grounds alleged in the Petition. Habeas Corpus Hearing Tr. 8-9.

10. The Petition contains grounds designated "A" through "P," titled as follows: *(Errors in grammar, punctuation, spelling and capitalization in original).*

A. "Ineffective Assistance of Counsel." Petition at 9-36.

B. 911 Recordings." Petition at 36-43.

C. "Failure preserve audiotape recorded statements." Petition at 43-47.

D. "Violation of the Petitioner's Sixth Amendment Constitutional Right to Confront Witnesses." Petition at 47-52.

E. "The Raleigh County Prosecuting Attorney's Office Committed Prosecutorial Misconduct with respect to Petitioner." Petition at 52-53.

F. "Prior Acts of prosecutorial misconduct." Petition at 53-56.

G. "Ms. Keller has Acted as an Over Zealous Advocate Instead of a Quasi-Judicial Mister of Justice." Petition at 56-61.

H. "The Judges of the 10th Judicial Circuit violated Trial Court Rule 17 resulting in an improper transfer of the Petitioner's case." Petition at 61-65.

I. "The 10th Judicial Circuit had an appearance of bias against the Petitioner." Petition at 65-68.

J. "The Trial Court 'abused its discretion' where it failed to bifurcate the trial and sentencing in derogation of West Virginia Constitution. Article III. § 10 and United States Constitution, Amendments 5 and 14 where the Defendant was prejudiced by his counsel's inability to argue mercy without admitting guilt." Petition at 68-73.

K. "The Trial Court Abused Its Discretion By Refusing To Strike Two Jurors For Cause Who Stated They Could Not Consider A Recommendation Of Mercy, Violating Mills' Right To A Trial By A Fair And Impartial Jury." Petition at 73-89.

3

L. "The Trial Court Abused Its Discretion By Allowing Improper Media Involvement That Caused Prejudice To The Petitioner And Resulted In An Inability To Receive A Fair Trail And Was A Violation Of Due Process." Petition at 89-93.

M. "The Trial Court Denied Mills His Right To Due Process And A Fair Trial When It Denied His Motion For A Mistrial As A Result of the Jury View Of The Crime Scene Which Became A 'Walking Parade' Where The Press Walked With And Photographed The Jurors." Petition at 93-98.

N. "The Trial Court committed constitutional error by permitting the entrance of gruesome photos over objection, which denied the Petitioner a fair trial with reliable results in violation of West Virginia Constitution, Article III, § 10 and 14 and United States Constitution. Amendments 5.6. and 14." Petition at 99-104.

O. "Court Abused Its Discretion by Denying Petitioner a Bifurcated Trial on the Issue of Eligibility for Probation." Petition at 104-108.

P. "Fruit of the Poisonous Tree-No Miranda warning/coercion to give 'voluntary statement.'" Petition at 108-115.

11. This Court finds as fact that pursuant to W.Va. Code § 53-4A-1, the W.Va. Supreme Court of Appeals previously and finally adjudicated a number of Mills' claims in *State v. Mills*, 631 S.E. 2d 586 (2005): these claims are designated in the Petition as "D," "F," (as to prosecutor's closing argument), "K," "L," "M."

12. As to the remaining claims in the Petition, this Court finds as fact that Mills has offered no evidence to rebut the § 53-4A-1 presumption that he "intelligently and knowingly failed to advance" several of his habeas "contentions and [ ] grounds in fact or law" which "could have been advanced by the petitioner before trial, at trial, or on direct appeal . . . but were not in fact so advanced . . . ."

13. The Petition contains no claim of ineffectiveness of appellate counsel and Mills and his habeas counsel have confirmed that Mills makes no such claim: accordingly, pursuant to W.Va. Code § 53-4A-1, any such contention has been "intelligently and knowingly" waived. Habeas Corpus Hearing Tr. at 91-92, 175. *McBride v. Lavigne*, 737 S.E. 2d 560, 573 (W.Va. 2012).

4

14. The "contentions and the grounds in fact or law" which could have been advanced by Mills on direct appeal, but were not advanced, and which are deemed intelligently and knowingly waived are designated in the Petition as follows: "B," "C," "E," "F" (as to contentions in addition to prosecutor's closing argument), "G," "H, "I," "J," "N," "O" and "P."

15. The sole remaining ground for consideration by the Court is the claim of ineffective assistance of counsel, designated "A" in the Petition.

16. The Petition (at 11-36) alleges eight specific instances of ineffectiveness of Mills' two trial attorneys, beginning with "1. [ ] Counsel Failed to Question or Have Suppressed Petitioner's Alleged Voluntary Statement As It Had Been Coerced."

17. The record reflects that during pre-trial hearing held July 28, 2003, defense counsel did, in fact, move to suppress Mills' confession, but Mills now complains that his counsel "failed to investigate" his post-conviction claim that he confessed after eavesdropping on a phone call by Detective Shumate and hearing Detective Shumate say to "'someone' on the phone that if he . . . does not talk, 'to charge his wife and daughter with conspiracy to commit murder.'" Petition at 12.

18. The record of the July 28, 2003 suppression hearing confirms that Mills declined to testify and that, based upon the uncontested evidence presented, the Circuit Court found that Mills "was given Miranda warnings twice" and "was not coerced" and "freely and voluntarily waived his rights to remain silent and gave a voluntary statement . . . . " 7/28/03 Pre-Trial Hearing 69-71.

19. Mills called one of his two trial attorneys from his second trial, John Sullivan, as a witness in the habeas hearing: Mr. Sullivan confirmed that Mills never made a claim to his counsel concerning any alleged "coercion" by Detective Shumate. Habeas Corpus Hearing Tr. 79-80.

5

20. During the habeas hearing Mills repeatedly confirmed that had made the decision to decline to testify at the suppression hearing and at trial because he was of the opinion that "Judge Hutchison had no authority over the case:" Mr. Sullivan also confirmed that Mills made the decision to decline to testify. Habeas Corpus Hearing Tr. 132, 180-182, 193-194, 219, 238.

21. There was no claim of "coerced" confession raised during the July 28, 2003 suppression hearing or during Mills' two direct appeals.

22. The Court finds as fact (a). that Mills has failed to prove that he ever disclosed to his defense counsel the version of events which he now claims constituted "coercion;" (b). that Mills' defense attorneys had no duty to investigate a claim of coercion never suggested to them by Mills; (c). that Mills made a voluntary decision not to testify at the July 28, 2003 suppression hearing, thereby waiving any claim that the Circuit Court erred in finding his confession voluntary and (d). that the admission of the confession into evidence was not the result of any unprofessional error on the part of defense counsel.

23. Further, the Court finds that even if Mills had disclosed his "coercion" claim to defense counsel and had testified to the same during the suppression hearing, there is no reasonable probability that the confession would have been suppressed: Mills has confirmed that he understood his Miranda warnings and that he agreed in the recorded confession that he had not been "coerced in any way" and now offers no evidence to support a finding that, under the totality of the circumstances, his confession was the product of an impelling coercive effect - - indeed, Mills claims that he was asked if wanted to "talk," not urged to confess. Habeas Corpus Hearing Tr. 208, 228, 230.

24. Although Mills testified at the habeas hearing that "(o)n three different occasions (he) had asked for an attorney" before confessing, Mr. Sullivan's testimony makes clear that Mills never relayed any such claim to his attorneys and Mills' habeas testimony confirms that he

6

made a voluntary decision not to make any such claim during the July 28, 2003 suppression hearing or at trial: further, no such assignment of error was made on either of Mills' direct appeals and he makes no habeas claim of ineffective assistance of appellate counsel. Habeas Corpus Hearing Tr. 206.

25. The next allegation of specific ineffective assistance of counsel in the Petition (at 15-25) is "2. Defense counsel pled petitioner guilty."

26. Mr. Sullivan confirmed that the defense decision to admit that Mills committed the homicide of Pamela Cabe was made in consultation with Mills and was a strategic decision with which Mills agreed, in the hope of winning a recommendation of mercy or a conviction of something less than first degree murder, as "(t)here was no — no expectation of an acquittal in this case." Habeas Corpus Hearing Tr. 54, 110-111.

27. The record reflects that Mills' trial counsel succeeded insofar as the Circuit Court instructed the jury in the lesser included offenses of second degree murder, voluntary manslaughter and involuntary manslaughter, despite the paucity of evidence to support such lesser verdicts. Habeas Corpus Hearing Tr. 111-112.

28. The Court finds that the excerpts of opening remarks and closing arguments by Mills' attorneys recited in the Petition, and used on direct examination of Mr. Sullivan, fail to convey the fact that the totality of such remarks and arguments were consistent with the defense strategy: indeed, during the habeas hearing Mr. Sullivan was read one part of a portion of the defense opening on direct examination and agreed that the words were a "mistake," but when he was read the complete part, he agreed that the words made "more sense in context" and that there was a strategic "reason (co-counsel) said that in opening statements." Habeas Corpus Hearing Tr. 60-61, 112-113.

7

29. The Court further finds that Mr. Sullivan's closing arguments were the result of a reasonable strategic decision designed to encourage the jury to return a recommendation of mercy. Habeas Corpus Hearing Tr. 66.

30. The Court finds as fact that, given the overwhelming admissible evidence in this case, the result of Mills' trial would not have been different if his attorneys' opening remarks and closing arguments had been different.

31. The conclusion that Mills and his trial counsel made a strategic decision not to contest the fact that Mills was the person who shot and killed Pamela Cabe is further confirmed by the fact that in both Mills' first and second appeals, based upon the petitions and briefs of appellate counsel, the W.Va. Supreme Court found as follows:

> It is undisputed that the defendant, Marvin Mills, fatally shot Pamela Cabe. The evidence at trial revealed the following. On September 8, 1999, the defendant entered Richmond Cleaners in downtown Beckley, West Virginia, where Mrs. Cabe worked, and shot her with a .38 caliber pistol once in the back and once in the head. Mrs. Cabe was dead by the time paramedics arrived moments later. After shooting Mrs. Cabe, the defendant walked across the street, sat on a wall, and watched emergency vehicles arrive while he smoked a cigarette. He was arrested without incident after a police officer recognized him as the shooter from a description given by a witness. *Mills*, 566 S.E. 2d at 895 (2002).

> \*\*\*

> The Appellant admits that he fatally shot Mrs. Pamela Cabe on September 8, 1999 at her employment location, Richmond Cleaners, in Beckley, West Virginia.

> \*\*\*

> During the Appellant's first trial, the defendant attempted to show that the Appellant had acted without premeditation or deliberation. The State, however, presented evidence indicating that the Appellant had premeditated the murder. The Appellant had been informed of the results of a custody hearing involving the mutual grandchild of the Appellant and Mrs. Cabe earlier that day. After hearing of the custody hearing results, the Appellant took his .38 caliber pistol, drove seven miles to Richmond Cleaners, walked into the business, took the gun out of a manila envelope, and shot four bullets, hitting Mrs. Cabe twice. *Mills*, 631 S.E. 2d at 590 (2005).

8

32. Mills' habeas claim that he was "not aware" that his trial attorneys were "going to plead (him) guilty in opening and closing statements" is belied by the fact that during his first trial and also on direct appeal, it was conceded that he was the killer of Pamela Cabe, and Mills makes no claim of ineffectiveness of appellate counsel: indeed, in his habeas testimony he conceded that his appellate counsel had consulted with him and that he was "satisfied with (their) representation" during the appeal, which included Mills' admission that he shot and killed Pamela Cabe. Habeas Corpus Hearing Tr. 175, 183, 213.

33. Mr. Sullivan's testimony that Mills admitted the same to his two trial attorneys and joined in the strategic decision to admit that he was the killer of Pamela Cabe in order to "lessen the damage" is further confirmed by the fact that in multiple forensic evaluations following his 1999 arrest and continuing into his second trial, Mills admitted that he shot and killed Pamela Cabe. Habeas Corpus Hearing Tr. 104-105, 217-218.

34. In his habeas testimony Mills contended that he never called the Circuit Court's attention to his new claim that he was "surprised" by what he now asserts were false opening remarks and closing arguments by his trial attorneys, but Mills also admitted that he made a decision not to call these matters to Judge John A. Hutchison's attention because, in Mills' opinion, the presiding judge "had no authority to rule over the case." Habeas Corpus Tr. 218-219.

35. Although there is no obligation on the part of a criminal defendant represented by counsel to communicate with the presiding judge, the record in Mills' first and second trials and appeals and post-conviction proceedings demonstrates that Mills persistently has directed letters to Judge John A. Hutchison and other judges and filed pro se pleadings even while represented by counsel, and that such communications have contained his complaints about the conduct of his several appointed attorneys: given that Mills voluntarily and repeatedly has expressed

9

such complaints, it is not plausible that he would have declined to do so if he had been "surprised" by his two attorneys' words or conduct during trial.

36. A review of all of the records in Mills' two trials and appeals and other post-conviction proceedings including his original *pro se* Petition for Writ of Habeas Corpus, the Amended Petition filed by former counsel and the instant Petition, confirms that Mills for the first time claimed that he "was not the shooter of Pamela Cabe" during the habeas hearing on July 15, 2014, approximately fifteen years after the killing and after repeatedly - - from his confession through multiple forensic evaluations and two trials and appeals - - admitting that he was the killer. Habeas Corpus Hearing Tr. 189.

37. The Court finds as fact that Mills' contention that he made a claim of actual innocence to his two trial attorneys is not credible, and that his attorneys committed no unprofessional error by conceding that Mills committed the homicide of Pamela Cabe.

38. The next claim of ineffective assistance of counsel is designated in the Petition (at 25-28) as: "3. Defense Counsel Fail (sic) to Dispute State's Claim that Petitioner Planned a 'Sneak Attack'."

39. Mr. Sullivan, called by Mills during the habeas hearing, opined that he "remember(ed) thinking that (he) had failed to properly cross-examine" Telia Echols concerning purported differences between her testimony in Mills' first trial and her testimony in the second trial, concerning the route Mills took in approaching Richmond Cleaners on foot: Mr. Sullivan on direct examination agreed with Mills' habeas counsel that impeachment of Ms. Echols as to Mills' route "could have led to argument about reasonable doubt and just - - in terms of the degree of the offense." Habeas Corpus Hearing Tr. 42-47.

40. Mr. Sullivan then agreed that Ms. Echols' testimony did "catch (him) by surprise," and that there were no other surprises at trial: he further agreed, and the Court so finds, that there

10

was nothing he or co-counsel could have done to raise reasonable doubt that Mills armed himself with the .38 caliber pistol hidden in a manila envelope and went into Mrs. Cabe's workplace and shot and killed her. Habeas Corpus Hearing Tr. 129-130.

41. Mr. Sullivan also agreed, and this Court so finds, that "whether one uses the phrase 'sneak attack' or not, all of the evidence - - and including what (the) defendant told (counsel) - - was that Mrs. Cabe was taken by surprise when the defendant came in with a gun in a manila bag (sic) and began firing." Habeas Corpus Hearing Tr. 120.

42. A review of the transcripts of Ms. Echols' testimony during Mills' first and second trials fails to convince the Court that there was, in fact, any material contradiction in her testimony concerning Mills' route into Richmond Cleaners, and in his habeas hearing Mills offered no evidence - - including testimony by Ms. Echols or any other witness - - to prove that defense counsel's cross-examination of Ms. Echols constituted unprofessional error or that different or additional cross-examination of Ms. Echols by Mills' attorneys would have changed the outcome of the trial. 2003 Trial Tr. 464-484.

43. The next claim of specific ineffectiveness of counsel is designated in the Petition (at 28-29) as "4. Defense Counsel's Failure to Investigate Eyewitness' Claim"

44. In the Petition (at 29) Mills contends that his counsel committed an unprofessional error by failing to call Martha Paulson as a witness because her "testimony most likely could have changed the outcome of the trial by injecting more than reasonable doubt into the trial," because "Paulson said she saw a dark skinned individual commit the crime (and) the Petitioner is a light-skin (sic) caucasion."

45. Martha Paulson was not called by either party at trial, and there is no dispute that her statement to police, upon which Mills now relies, was provided to defense counsel by the State in "open file" pre-trial discovery. Habeas Corpus Hearing Tr. 101.

11

46. Mr. Sullivan testified during the habeas hearing that a choice was made to refrain from challenging the physical description of Mills provided by Martha Paulson, which would have required calling her as a defense witness. Habeas Corpus Hearing Tr. 61-62.

47. The Petition (at 28-29) recites only a portion of Martha Paulson's statement to police, and on direct examination of Mr. Sullivan Mills' habeas counsel alluded only to Martha Paulson's description of Mills as "black" or "hispanic." Habeas Corpus Hearing Tr. 53.

48. However, attached to the Petition as Exhibit W is the entire statement of Martha Paulson, in which she stated:

> MC (sic)The only thing I could see was the back of his head . . . I think he was black or Hispanic cause he was dark skinned but not real dark.

\*\*\*

| | |
|---|---|
| GL: | Ok. But you just saw the back of his head? |
| MC (sic): | Yes. |
| GL: | So your (sic) not sure what race he was? |
| MC (sic): | No Uh Huh (sic). |

49. The Court finds that there was no unprofessional error in the decision of Mills' trial attorneys' to refrain from calling Martha Paulson as a witness to attempt to create doubt as to the identity of the killer: further, the Court notes that Mills in the habeas hearing offered no testimony - - of Martha Paulson or any other witness - - to demonstrate that Martha Paulson's trial testimony would have affected the outcome of the trial.

50. The Court further notes that during the habeas hearing, Mills' habeas counsel on direct examination of Mr. Sullivan asked whether the presence or absence of a beard on Mills - - described by at least one witness - - on a booking photo could have raised reasonable doubt:

12

the booking photo introduced into evidence as State's Exh. 22 at trial confirms that Mills had a full beard at the time of the killing, as did the trial testimony of his former wife. 2000 Trial Tr. 546.

51. The Court finds as fact that the choice made by Mills' trial attorneys, to refrain from attacking the accuracy of physical descriptions of the killer provided by witnesses, was a reasonable strategic decision that did not affect the outcome of the trial. Habeas Corpus Hearing Tr. 69-70.

52. The next claim of a specific instance of ineffective assistance of counsel is designated in the Petition (at 29-32) as: "5. Defense Counsel Failed to Impeach Witness' Inconsistent Statements."

53. The claims made in this regard have been addressed above, and the Court reiterates that the choice of Mills' trial attorneys to refrain from contesting the identity of Mills as the killer of Pamela Cabe was not an unprofessional error and did not affect the outcome of the trial: this is especially so since Mills in his first appeal preceding this trial - - and again in his second appeal - - made no claim of misidentification or insufficiency of the evidence and instead conceded that he was guilty of the homicide of Pamela Cabe, and Mills makes no claim of ineffective assistance of appellate counsel.

54. The next specific claim of ineffective assistance of counsel is designated in the Petition (at 32-33) as "6. Defense Counsel Failed to Investigate and Clarify Firearm Examiner Testimony." In contending that his two trial attorneys committed an unprofessional error in declining to contest the fact that he was the killer, Mills simply misstates the undisputed evidence, arguing that "the cartridge and the bullets never matched the gun" and that "(t)he gun was not found in (his) possession:" Mills has offered no evidence, either during his two trials or during this habeas proceeding, to rebut the firearms examiner's expert testimony that the bullet

13

fragments recovered at the murder scene were consistent with the .38 caliber pistol found within arm's reach of Mills and thus in his constructive possession and that three of the recovered casings "had characteristics . . . made by this particular gun" - - Mills' .38 caliber pistol. 2003 Trial Tr. 576, 687-689.

55. The next specific claim of ineffective assistance of counsel is designated in the Petition (at 33) as "7. Defense Counsel Failed to Challenge the Gun Residue (sic) Kit."

56. The Petition recites the fact that Mills, by counsel, stipulated at trial that forensic laboratory testimony would confirm the presence of gunshot residue on the swabs from Mills' hands taken by police on September 8, 1999: Mills now asserts that he had been using two nail guns prior to the killing of Pamela Cabe, and that his trial attorneys committed an unprofessional error by failing to investigate such claim.

57. Mr. Sullivan offered no testimony to corroborate the claim in the Petition (at 34) that Mills informed defense counsel of his use of nail guns prior to the homicide.

58. The Petition (at 34-35) contends that Mills' trial attorneys committed an unprofessional error by "fail(ing) to have the gunshot residue retested," but Mills in this habeas proceeding has made no motion to have such retesting accomplished and has offered no expert testimony to support his entirely speculative claim that his use of nail guns earlier on the day of the killing might have made it "difficult to link the gun to the Petitioner."

59. Further, since it is only Mills who now contends that he was using nail guns, and since - - as discussed above - - he voluntarily refused to testify at pre-trial suppression hearings and at trial, his attorneys cannot be faulted for failing to investigate a claim which necessarily would have depended upon testimony made unavailable by Mills' refusal to testify.

60. Further, as discussed above, as the West Virginia Supreme Court of Appeals, adopting the position advanced by Mills on appeal, twice has found as fact that Mills armed himself with

14

his .38 caliber pistol and fired two bullets into Pamela Cabe, and as Mr. Sullivan has confirmed throughout the habeas hearing that Mills agreed to such findings of fact, this Court finds that Mills' two trial attorneys did not commit an unprofessional error by declining to investigate an alternative explanation for either the firearm examiner's expert testimony or positive results of the gunshot residue kit.

61. The next specific claim of ineffective assistance of counsel is designated in the Petition (at 35-36) as "8. Failure to Move for Mistrial/Pre-Trial Motions Regarding Missing Evidence."

62. Although designated as a claim of ineffective assistance of counsel, the Petition (at 35-36) offers no evidence of error by Mills' trial attorneys in this regard, and instead argues that "the State reasonably anticipated *as should his first trial counsel* that evidence would likely need to be preserved" following Mills' first conviction, and that his second "convection (sic) should be overturned" because by the time of Mills' second trial only the transcripts of witness statements - - but not the recordings - - were in the State's possession. (Italics added).

63. Mills offers no evidence to show that copies of the recordings about which he complains were not provided to and were not originally in the possession of the attorneys who represented him in his first trial; nor does he offer any evidence that the transcripts of such recordings, which were provided to his trial attorneys in both his first and second trials, were inaccurate or that the absence of the recordings during his second trial deprived him of material or exculpatory evidence.

64. The record confirms that Mills' trial counsel filed a motion for sanctions due to the apparent absence of the recordings of the Emergency Operations Center "911 call" made after the killing and of witness statements from which transcripts were made and provided to the defense. 2003 Trial Tr. 271-275.

15

65. In arguing that certain witnesses should have been barred from testifying, Mills' counsel conceded that "if none of these witnesses testify, the State still has a perfectly good case against Mr. Mills. They have a shooting, they have a confession, they have a weapon." 2003 Trial Tr. 274.

66. After taking testimony and hearing argument of counsel, the Circuit Court found, *inter alia*, that there was no State misconduct to justify the imposition of sanctions and that the transcripts of the recordings satisfied Rule 26.2, W.V. R. Crim. Pro., and denied the defense motion for sanctions: accordingly, it is clear that a defense motion for mistrial would not have been granted. 2003 Trial Tr. 271-304, 357-366.

67. No claim of error was made on direct appeal concerning recordings of the "911" call or witness statements, and there was no claim that the Circuit Court erred in denying the defense motion for sanctions: accordingly, as discussed above, any such claims have been waived pursuant to W.Va. Code § 53-4A-1.

68. During the habeas hearing Mr. Sullivan confirmed that although he "would have wanted to have" the recordings from which the transcripts were made, his primary purpose in filing the motion for sanctions was "in preserving . . . an appellate issue" and that the recordings themselves "would not have been useful in preparing for trial." Habeas Corpus Hearing Tr. 29-31.

69. The Court finds as fact that Mills has failed to sustain his burden of proving that he was prejudiced in any way by the fact that transcripts, but not recordings, of witness statements were available to him during trial: further, the fact that the issue was "preserved" by his trial counsel but never raised by appellate counsel confirms that any claim in this regard has been waived, particularly since Mills makes no claim of ineffective assistance of appellate counsel.

16

70. Following the eight specific claims of ineffective assistance of counsel, the Petition (at 36-47) converts the same contentions into claims that the State violated Rule 26.2, W.V. R. Crim. Pro. and suppressed exculpatory evidence: as discussed above, these claims never were raised on direct appeal and thus have been waived pursuant to W.Va. Code § 53-4A-1.

71. Nevertheless, the Court finds that a Rule 26.2 violation - - even if it occurred - - is not an issue of constitutional dimension cognizable in a habeas proceeding, and that Mills has failed to establish that the prosecution withheld any exculpatory evidence.

72. The Petition (at 47-52) then recites a claim previously and finally adjudicated in *Mills*, 631 S.E. 2d at 596-597 (2005) concerning the victim's fear of Mills: the Petition's reliance on *Crawford v. Washington*, 541 U.S. 36, 1245 S.Ct. 1354, 158 L. Ed 2d 177 (2004) and *State v. Mechling*, 633 S.E. 2d 311 (2006) does not affect that previous adjudication for reasons including (a). there is no claim that such statement of the victim was "testimonial" so as to fall within the holdings of *Crawford* and *Mechling*; (b). neither the *Crawford* nor the *Mechling* opinion issued until after Mills' second trial; and (c). there is no claim that Mills' appellate counsel was ineffective for declining to rely upon *Crawford* on appeal.

73. The Petition (at 52-61) sets forth Mills' complaints about the prosecuting attorney, which claims began during his 1999 arraignment and have persisted continuously through his *pro se* response to the State's Response to Amended Petition for Writ of Habeas Corpus and his testimony during the habeas hearing: except for a contention concerning the prosecutor's closing argument, this claim also has been waived pursuant to W.Va. Code § 53-4A-1 and the contention concerning the prosecutor's closing argument was previously and finally adjudicated in *Mills*, 631 S.E. 2d 592-594 (2005). *Mills*, 566 S.E. 2d at 903-904, n. 3 (2002).

74. Mills' complaints against the prosecutor all are rebutted by the State's Response to Amended Petition for Writ of Habeas Corpus: even assuming *arguendo* that the complaints have a

17

factual basis, Mills has made no showing that the conduct of the prosecuting attorney prejudiced him or that the results of his trial would have been different if the prosecuting attorney had conducted the trial differently or if some other prosecutor had represented the State at trial.

75. The Petition (at 61-68) then complains about Judge John A. Hutchison and other Raleigh County judges and officials: as discussed above, these claims also were not raised on direct appeal and thus have been waived pursuant to W.Va. Code § 53-4A-1.

76. Mills' primary complaint is that, prior to his first trial and after he moved to disqualify Judge H.L. Kirkpatrick III, his case was transferred to Judge John A. Hutchison: Mills contends that this was in violation of Rule 17, W.V.T.C.R.

77. Mills testified on direct examination by his counsel during the habeas hearing, concerning the transfer of his case to Judge John A. Hutchison, as follows:

> Q: [ ] My questions is, at some point, you have to show prejudice - -
>
> A: Excuse me.
>
> Q: Sure.
>
> A: I don't think you have to show prejudice in a procedure. You know, trial court Rule 17 is procedure. It doesn't require prejudice.
>> Habeas Corpus Hearing Tr. 196.

78. The Court finds as fact that, even assuming a Rule 17 error occurred prior to Mills' first trial, such error is not of constitutional dimension and that any such claim has been waived by the absence of any motion to recuse Judge John A. Hutchison from Mills' first and second trials, as well as by the absence of any claim of error in this regard on direct appeal: further, even when invited by his habeas counsel to make some showing of prejudice in this regard, Mills could not do so.

79. The Court further finds as fact that the claims of prosecutorial and judicial misconduct raised in the Petition were previously raised by Mills in a Petition for Writ of Prohibition filed by Mills before the W.Va. Supreme Court of Appeals on May 22, 2012, seeking the recusal of both Judge John A. Hutchison and the prosecuting attorney, and that such Petition for Writ of Prohibition was refused by Order of the Supreme Court of Appeals entered June 19, 2012.

80. Mills in the Petition next argues that the Circuit Court erred in refusing to bifurcate closing arguments: as discussed above, such claim has been waived pursuant to W.Va. Code § 53-4A-1 because it was not raised on direct appeal: further, the Petition and the testimony offered during the habeas hearing fail to make any showing that Mills was prejudiced by unitary closing arguments or that the Circuit Court's ruling in this regard was an error of constitutional dimension cognizable in a habeas proceeding.

81. Mills in the Petition (at 73-89) complains about jury selection, a claim previously and finally adjudicated pursuant to W.Va. Code § 53-4A-1 in *Mills*, 590 S.E. 2d 590-592 (2005): further, as to the two jurors named in the Petition and on direct appeal, Mills is entitled to no relief because the Petition (at 73) confirms that they were removed by Mills' preemptory strikes. *State v. Sutherland*, 745 S.E. 2d 448, 450 (W.Va. 2013).

82. Mills in the Petition (at 82-89) complains about the body language of an unknown "Jane Doe" juror who "did not actually give answers which indicated bias" but who, Mills claims, "so blatantly . . . was flirting with (the) Judge and the Judge seemed to be delighted . . . ."

83. No such claim was made by Mills' trial or appellate counsel; there is an absence of any record to substantiate his claim; he presented no credible evidence during the habeas hearing concerning his supposed observations of "Jane Doe" and in the absence of any trial record or factual basis for his claim concerning this unknown juror, the claim is entirely without merit.

19

84. The Petition (at 89-99) again reiterates a claim previously and finally adjudicated concerning the jury view and the Court's refusal to grant the motion for mistrial made by Mills' trial counsel: pursuant to W.Va. Code § 53-4A-1, Mills' habeas claim in this regard is without merit. *Mills*, 631 S.E. 2d at 594-596 (2005).

85. The Petition (at 99-104) makes another claim never raised on direct appeal and thus waived pursuant to W.Va. Code § 53-4A-1: he claims that the Circuit Court "committed constitutional error by permitting the entrance (sic) of gruesome photographs," a claim that is not of constitutional dimension so as to be cognizable in a habeas proceeding.

86. Although this claim has been waived, this Court notes that the test as to the admissibility of photographs is not whether the photographs are "gruesome" but whether they are relevant and whether their probative value outweighs their unfair prejudicial effect: only two photographs of Pamela Cabe's body at the crime scene were introduced at trial, and this Court finds that they were relevant to show the position of the victim and the injuries inflicted upon her and that they resulted in no unfair prejudice.

87. Mills in the Petition (at 104-106) then raises another claim waived pursuant to W.Va. Code § 53-4A-1, and complains that the indictment included a firearm allegation as set forth by W.Va. Code § 62-12-2: in addition to finding that any such claim has been waived, this Court finds that Mills has failed to make any showing that the firearm allegation was improper or that it prejudiced him in any manner or constituted an error of constitutional dimension cognizable in a habeas proceeding.

88. Mills' final claim in the Petition (at 108-115), "Fruit of the Poisonous Tree - - No Miranda warning /coercion to give 'voluntary statement,'" has been discussed under the ineffectiveness of counsel claims above: such claim has been waived pursuant to W.Va. Code § 53-4A-1 and, as discussed above, is without merit even in the absence of such waiver.

20

89. The Court concludes that the following "contentions in fact" have been previously and finally adjudicated by the W.Va. Supreme Court of Appeals in *Mills* (2002) and *Mills* (2005): Mills had been informed of the results of a custody hearing involving the mutual grandchild of Mills and Pamela Cabe; Mills armed himself with his .38 caliber pistol, drove seven miles to Richmond Cleaners, walked into Richmond Cleaners, where Pamela Cabe was employed, took the gun out of a manila envelope and fired multiple rounds, fatally shooting Pamela Cabe in her back and in her head. Mills then walked across the street and watched emergency vehicles as he smoked a cigarette until he was arrested after a police officer recognized that he matched the description of the killer given by a witness. He then confessed.

90. Pursuant to W.Va. Code § 53-4A-1 and Rule 4, W.Va. Rules Governing Post-Conviction Habeas Corpus Proceedings, these "contentions in fact . . . relied upon in the (P)etition have been previously and finally adjudicated" and the findings of fact of the W.Va. Supreme Court of Appeals are *res judicata* in this habeas proceeding.

91. Mills for the first time during the habeas hearing - - some fifteen years after the killing of Pamela Cabe - - adopted a new strategy, and testified that he was not the killer, despite never making such claim in the Petition which gave rise to this habeas proceeding or in his original *pro se* Petition for Writ of Habeas Corpus or his Amended Petition filed by his former counsel, or in his two direct appeals or in his two trials, demonstrating that his new "contention in fact" has been both previously and finally adjudicated and waived pursuant to W.Va. Code § 53-4A-1 and Rule 4, W.Va. Rules Governing Post-Conviction Habeas Corpus Proceedings.

92. Mills has failed to make any claim of actual innocence such as would warrant habeas review. *Schlup v. Delo*, 115 S. Ct. 851, 513 U.S. 298, 130 L. Ed 2d 808 (1995), *Wilson v. Greene*, 155 F.

21

3d 396, 404-405 (4th Cir. 1998): "The claim must be based on reliable evidence not presented at trial.' [ ] A reviewing court must evaluate the new evidence alongside any other admissible evidence of the defendant's guilt, [ ] and may grant relief only where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (Citations omitted).

93. Mills' new claim that he was not the killer of Pamela Cabe is not "new evidence" because Mills had the opportunity to make such claim in his first and second trials and on his two direct appeals and in his several post-conviction pleadings, but declined to do so.

94. Further, even if Mills' new "contention in fact" had not been previously and finally adjudicated and waived, and even if testimony entirely under his control could be deemed "new evidence," Mills, after admitting during the habeas hearing that he was at Richmond Cleaners at the time of the killing, refused to answer the obvious question as to whether he witnessed the killing: even when a habeas petitioner invokes the Fifth Amendment, "the trial court may properly draw an adverse inference from the habeas corpus petitioner's silence," and such adverse inference is stronger still when the petitioner simply refuses to answer a relevant inquiry without even an assertion of the privilege. Habeas Corpus Hearing Tr. 222-223; *State ex rel. Myers v. Sanders*, 526 S.E. 2d 320 (W.Va. 1999).

95. During his habeas testimony, Mills confirmed that he was advised by the Circuit Court of his right to testify at trial and his testimony during the habeas hearing rebutted any claim of actual innocence which he may have been attempting to put forth: he admitted that police officers' trial testimony about his location across from Richmond Cleaners when apprehended immediately after the killing was correct; that he had driven his white van to the location; that the gun located outside of Richmond Cleaners had "been in (his) possession for four years;" that his reason for going to Richmond Cleaners was "to get control of (him)self;" that he "wanted to scare" Pamela Cabe; that the "problem" he had with Pamela

22

Cabe concerned their grandchild; that he went to Richmond Cleaners because he wanted Pamela Cabe to "make sense" about custody of the grandchild; that he did not tell his wife where he was going when he left for Richmond Cleaners; that he "seen(sic) money flashing, O.J. Simpson - - rich people just do whatever they want;" that he was aware that the manila envelope containing his return address was recovered from the crime scene and that "all this was over custody of a grandchild." Habeas Hearing Tr. 230-237.

96. The Court concludes as a matter of fact and as a matter of law that the testimony offered by Mills at his habeas hearing rebutted his claim that his conviction was the result of any unprofessional error by his two trial attorneys and rebutted his claim that, but for such error, there is a reasonable probability he would not have been convicted of the first degree murder of Pamela Cabe by use of a firearm with no recommendation of mercy.

97. Under the two-prong test for evaluating ineffective assistance of counsel claims, established by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and *State v. Miller*, 459 S.E. 2d 114 (1995), the burden is on the habeas petitioner to establish *both* prongs of the test, and in determining whether, but for unprofessional errors, there is a "reasonable probability" that the result of the trial would have been different, the operative definition of "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *State ex rel. Bowers v. Scott*, 697 S.E. 2d 722, 727-729 (W.Va. 2010).

98. This Court concludes that Mills had no quarrel with counsel nor any claim of ineffectiveness of counsel when his trial attorneys in both of his two trials and his appellate counsel in his two direct appeals conceded that he was guilty of the homicide of Pamela Cabe: his habeas claim of ineffective assistance of counsel came only after the strategy that had succeeded in winning him a re-trial in 2002 failed to win him a second remand in 2005:

23

> A defendant is not denied counsel merely because the prosecution has been permitted to introduce evidence of guilt - - even evidence so overwhelming that the attorney's job of gaining an acquittal is rendered impossible. In such circumstances the accused continues to enjoy the assistance of counsel; the assistance is simply not worth much. *Id.,* citing *Kansas v. Ventris* 566 U.S.___, ____, 129 S. Ct. 1841, 1846, 173 L. Ed. 2d 801 (2009).

99. When a strategic or tactical decision by counsel makes a particular investigation unnecessary, counsel is not deemed ineffective for choosing not to pursue such investigation:

> Counsel is constitutionally ineffective only if professional standards caused the defendant to lose what he otherwise probably would have won. Thus, the determinative issue is not whether the defendant's counsel was ineffective but whether he was thoroughly ineffective so that defeat was 'snatched from the jaws of victory.' *State v. LaRock,* 470 S.E. 2d 613, 628, n. 22 (W.Va. 1996).

100. The authorities cited in the Petition in support of the claim that Mills' trial attorneys committed unprofessional error by failing to conduct an investigation into whether or not Mills was the killer are inapplicable to this case, in which the fact that Mills did, in fact, shoot and kill Pamela Cabe already had been conceded by Mills during his first trial and on direct appeal and "previously and finally adjudicated" by the W.Va. Supreme Court of Appeals: counsel has "a duty to either investigate an issue or *to make a reasonable decision that makes particular investigation unnecessary,*" and a reviewing court must "apply [ ] a heavy measure of deference to counsel's judgments." Syl. Pt. 3, *State ex rel. Daniel v. Legursky,* 465 S.E. 2d 416, 422 (W.Va, 1995). (Italics added).

101. Mills' reliance upon *State ex rel. Strogen v. Trent,* 469 S.E. 2d 7, 13 (W.Va. 1996) is misplaced because in *Strogen,* the defendant entered a guilty plea to first degree murder eleven days after his attorney was appointed, and his counsel never "fil(ed) a motion to suppress the (defendant's) statement, or any other motions" and "could not have made an informed decision concerning the statement's validity." In contrast, Mills' two trial attorneys

24

from the Kanawha County Public Defender's Office had the benefit of consultation with Mills' appellate counsel in the same office; Mills had been represented by that office since his original 2000 conviction, and his two trial attorneys were appointed long before his second trial; Mills' trial attorneys filed and vigorously argued a motion to suppress Mills' confession and several other motions, including, *inter alia*, a motion for bifurcation of arguments, a motion for sanctions to exclude State's witnesses from testifying, a motion for mistrial and a motion to exclude the prior trial testimony of firearms examiner C.R. Lane; Mills' two trial attorneys had the benefit of "open file" discovery and the transcripts of the first trial, including complete investigative reports, statements of all witnesses, multiple psychiatric and psychological evaluations of Mills and copies of or access to all exhibits to be introduced at trial; Mills' attorneys had the benefit of the W.Va. Supreme Court of Appeals opinion following Mills' first trial; Mills had two highly experienced criminal lawyers who had all information necessary to undertake Mills' defense, including Mills' version of events, and had a complete understanding of the facts and issues of the case. Habeas Corpus Hearing Tr. 18-19, 20-21, 95, 97-101.

102.     The Petition also cites *State ex rel. Vernatter v. Warden*, 528 S.E. 2d 207, 212-214 (W.Va. 1999), a case in which the habeas petitioner claimed that his attorneys had been ineffective for failing to investigate an insanity defense and the Circuit Court denied the habeas petition. In affirming the Circuit Court, the W.Va. Supreme Court of Appeals agreed with the Circuit Court that, based upon the petitioner's statements to counsel, an insanity claim would have been false and "trial counsel could not perpetuate a fraud upon the Court in assisting the petitioner in offering false testimony. . . or indirectly presenting a defense based upon false representations. . . ." and that counsel "*may properly rely upon the truthfulness of confidential*

25

*statements made by the defendant in deciding what investigations may be necessary."* (Italics added).

103.    This Court concludes that Mills' trial counsel made a reasonable decision not to conduct further investigation as to whether Mills committed the homicide of Pamela Cabe because counsel had overwhelming proof, including Mills' admissions to counsel, that he had committed the homicide - - a position his appellate counsel advanced before the W.Va. Supreme Court of Appeals, with Mills' approval, during his successful first appeal and again during his unsuccessful second appeal.

104.    This Court also concludes that the decision of Mills' attorneys to refrain from cross-examining particular witnesses or from asking particular questions was a strategic decision which did not constitute an unprofessional error or affect the outcome of the trial. *State v. Frye*, 650 S.E. 2d 574, 577 (W.Va. 2006).

105.    In the Petition and during the habeas hearing Mills cited *United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed 2d 657 (1984), a case in which the 10th District Court reversed the defendant's conviction based upon ineffective assistance of counsel and the United States Supreme Court, in turn, reversed the 10th Circuit, in *dicta* confirming the fact that the Sixth Amendment guarantees a criminal defendant the right to an advocate in an adversarial trial proceeding.

106.    This Court concludes that Mr. Sullivan during the habeas hearing was correct in confirming, as the record demonstrates, that he and his co-counsel were vigorous advocates on Mills' behalf in an "absolutely adversarial" trial against the State. Habeas Corpus Tr. 56-57, 107.

107.    The United States Supreme Court in note 19 of *Cronic* confirmed, as did the W.Va. Supreme Court in *Vernatter, supra*:

26

Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.

108. While arguing that his counsel committed an unprofessional error in declining to challenge the evidence that he was the killer, Mills also contends that his attorneys should have produced evidence to demonstrate that Mills' reaction to learning of the custody ruling caused him to kill without malice and as a result of provocation: this Court concludes that such inconsistent strategies would have caused a reasonable jury to convict the defendant of first degree murder and that emphasis on Mills' "reason" for committing the homicide would have served only to strengthen the State's case concerning his motive, malice and premeditation. Habeas Corpus Hearing Tr. 74-77, 156-157, 165-167, 169-170.

109. The Court further concludes that, given the overwhelming evidence that Mills committed the first degree murder of Pamela Cabe by use of a firearm and further, given his voluntary decision to decline to testify or to attempt to explain to the jury any facts in mitigation of his conduct, the only course available to his counsel was to attempt to "lessen the damage" by admitting the homicide and attempting to persuade the jury to recommend mercy: this Court concludes that Mills' attorneys committed no unprofessional error in this or any other regard and that the result of Mills' second trial would not have been different if his counsel had conducted his defense differently. See *Fletcher v. State*, 756 S.E. 2d 625, 627-628 (Ga. App. 2014).

110. In the habeas hearing Mills complained that his trial attorneys should have "spoke (sic) to all the witnesses . . . family members . . . (to) have prepared (sic) mitigating circumstances for a mercy defense - - I mean, for a mercy plea:" the Court notes that such defense witnesses testified during Mills' first trial, which resulted in precisely the same verdict as in his second

27

trial, providing his counsel in the second trial empirical evidence that jurors would not be persuaded to grant mercy on the basis of defense testimony that Mills was "a good family man" who was upset over decreased visits with his grandchild: "a good family man" does not murder his grandchild's grandmother. Habeas Corpus Tr. 169, 185-186. 2000 Trial Tr. 999-1040.

111. Having found that pursuant to W.Va. Code § 53-4A-1 and Rule 4, W.Va. Rules Governing Habeas Corpus Proceedings, Mills has waived any claim of error concerning the absence of the "911" recording and recordings of statements from which transcripts were prepared, this Court further finds that Mills fails to show any error in this regard: a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) occurs only when "material" evidence has been suppressed by the prosecution:

> (W)e noted that suppressed evidence . . . is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. *State ex rel. Bowers v. Scott*, 697 S.E. 2d 722, 727 (W.Va. 2010), citing *State v. Fortner*, 387 S.E. 2d 812, 820 (W. Va. 1989).

112. This Court concludes that no material evidence was suppressed by the prosecution: indeed, Mills claim of inaccurate witness identification relies upon police reports and transcripts of the recordings of witness statements provided by the State to the defense in pre-trial discovery and the identification of Mills was not a bona fide issue at trial: there is no "reasonable probability" that if the recordings of the transcribed statements had been preserved after Mills' first trial, the result of his second trial would have been different.

113. In *Ballard v. Ferguson*, 751 S.E. 2d 716 (W.Va. 2013) the W. Va. Supreme Court of Appeals upheld the Circuit Court's order granting a petition for writ of habeas corpus and opined that "the best evidence (the defendant) had to defend his claim of innocence at trial was suppressed through (defense counsel's) constitutionally deficient performance:" there was a

28

police report describing that "someone else had committed the crime;" there were "five witnesses . . . who made . . . exculpatory statements;" there was "evidence . . . to support third-party guilt; the defendant consistently "protest(ed) his innocence;" there was "no eyewitness identification" and "no evidence directly linking (the defendant) to the weapon used in the killing." Due to trial counsel's failure to investigate any of these bona fide issues, the W.Va. Supreme Court of Appeals found that the trial could not be "relied upon as having produced a just result."

114.    As discussed at length above, Mills' case is the opposite of the case presented in *Ballard v. Ferguson*, as confirmed by the findings of fact contained in the two opinions of the W.Va. Supreme Court of Appeals in 2002 and again in 2005.

115.    "It has long been recognized that ' [a} habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.'" *McBride v. Lavigne*, 737 S.E. 2d 560, 573, n. 38 (W.Va. 2012), citing Syl. Pt. 4, *McMannis v. Mohn*, 254 S.E. 2d 805 (1979). This Court concludes as a matter of law that there were no errors of constitutional dimension in the second trial resulting in Mills' conviction of first degree murder by use of a firearm without a recommendation of mercy.

## CONCLUSION

For the foregoing reasons, it is ORDERED that the Petition is DENIED and DISMISSED with prejudice, and that any further petitions for habeas corpus relief or other extraordinary relief related to Mills' conviction and sentence in Raleigh County Indictment No. 99-F-213-H shall be summarily dismissed pursuant to W.Va. Code §53-4A-1 and Rule 4, W.Va. Rules Governing Post-Conviction Habeas Corpus Proceedings. Further, pursuant to Rule 9, W.Va. Rules Governing Post-

29

Conviction Habeas Corpus Proceedings, this Court finds that Mills has been informed and has understood his obligation to raise all grounds for relief in this omnibus habeas corpus proceeding and has knowingly and intelligently waived all grounds not specifically asserted; that he has set forth no State nor Federal constitutional grounds for relief; that he has been represented in this proceeding by competent and effective counsel, and that the result of this proceeding is not a consequence of any error or ineffective assistance on the part of habeas counsel.

The Clerk is Ordered and Directed to send a copy of this ruling and Order to counsel as listed below.

Entered this 25th day of January, 2018.

John L. Cummings, Special Judge

The foregoing is a true copy of an order entered in this office on the 30 day of Jan. , 20 18 . PAUL H. FLANAGAN, Circuit Clerk of Raleigh Co., WV By _____ Deputy

Raleigh County Prosecuting Attorney
Raleigh County Courthouse
Beckley, WV

Stephen P. New, Esq.
114 Main Street
Beckley, WV 25801